UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  3:13CR226 (RNC) |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARPENTER and | : | November 5, 2014 |
| WAYNE BURSEY | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTIONS FOR ISSUANCE OF SUBPOENAS PURSUANT TO RULE 17(c)**

The Government respectfully submits this memorandum in opposition to defendant Daniel Carpenter and defendant Wayne Bursey's motions for issuance of subpoenas pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.  (Docs. 73, 78, 79)  Their motions seek subpoenas commanding the non-party insurance companies, who are the alleged victims of the defendants' scheme to defraud in this case, to produce certain records related to the insurance policies that are the subject matter of the superseding indictment.  However, the defendants seem to ignore the fact that, except for certain documents that Carpenter requests, they already have most of the documents they seek, which the Government obtained from the insurance companies and turned over as part of its discovery obligations.  Thus, under the Supreme Court's decision in *United States v. Nixon*, 418 U.S. 683, 700 (1974), Rule 17(c) subpoenas for those documents are unwarranted.  With respect to the additional documents that Carpenter seeks, the documents are irrelevant and would be inadmissible at trial.  In short, it appears that the defendants are improperly seeking Rule 17(c) subpoenas to put the insurance companies through unnecessary expense and to engage in a fishing expedition on the off-chance they may find favorable evidence.  Rule 17(c) cannot be used for such a purpose.  As such, the defendants' motions should be denied.

I.    **BACKGROUND**

On December 12, 2013, a federal grand jury sitting in Hartford, Connecticut returned a 33-count indictment charging defendants Daniel Carpenter ("Carpenter") and Wayne Bursey ("Bursey") with Wire Fraud, in violation of 18 U.S.C. § 1343; Mail Fraud, in violation of 18 U.S.C. § 1341; and Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349. Both defendants were arraigned on January 17, 2014, and were released on secured bonds. On May 14, 2014, the same federal grand jury returned a superseding indictment. The Superseding Indictment included the original 33 counts of mail and wire fraud and conspiracy, and then added an additional 24 counts of money laundering, illegal monetary transactions, and conspiracy to commit money laundering. Carpenter was arraigned on the superseding indictment on May 28, 2014, and Bursey was arraigned on June 24, 2014. Carpenter has since been incarcerated on a previous conviction from the District of Massachusetts. *See United States v. Daniel Carpenter*, No. 1:04CR10029 (GAO).

A.    **The Superseding Indictment**

The Superseding Indictment charges the defendants with participating in a scheme to defraud life insurance providers through materially false and fraudulent representations to those providers in connection with the purchase of universal life insurance policies within the Charter Oak Trust ("COT"). Superseding Indictment ("SI") at ¶ 25. Although the COT purported to be a bona fide welfare benefit plan, the Superseding Indictment alleges that in practice it was run by the defendants as a means to procure life insurance policies on the lives of elderly strangers and then to resell those policies after two years, all without the knowledge or acquiescence of the life insurance providers that issued the policies. SI ¶¶ 30, 34, 36.

2

The scheme involved several basic steps.  First, insurance agents working for or on behalf of the Subject Entities recruited elderly "Straw Insureds" to participate in the COT, often with the promise of free insurance for two years, after which the Straw Insured may receive a share of the proceeds from a sale of the policy.  SI ¶ 26.  A "paper company" was often set up for the Straw Insured to allow them to participate in the COT, often without the knowledge, approval, and/or consent of the Straw Insured.  SI ¶ 27.  The agent would then fill out a life insurance application that had several misrepresentations, including denying the third-party funding of premiums, denying discussions regarding the possibility of a policy sale, and falsely claiming that the policy was being purchased for "estate planning" purposes.  SI ¶ 28.  The applications also often included inflated financial information and denials of the performance of life expectancy reports.  SI ¶ 28.  The Superseding Indictment alleges that these fraudulent applications were "submitted and caused to be submitted" to the life insurance providers by Carpenter, Bursey, and others known and unknown.  SI ¶ 38.

The Superseding Indictment further alleges that, in truth, no "employer" or Straw Insured ever paid a premium into the Trust, and the premiums were funded by loans, which typically came to the Trust from another company headquartered in Simsbury and controlled by Carpenter.  SI ¶ 30.  In many cases, those loans were, in turn, financed by another third-party financing company based in Stamford.  SI ¶ 30.  The loan arrangements were withheld from the insurance providers, who would likely not have issued policies had they known the true nature of the Trust, and had the insurance applications been filled out truthfully.  SI ¶¶ 17, 32-34. Although the scheme involved a total of 84 fraudulently-originated policies on 76 Straw Insureds, the Superseding Indictment further specifies 12 Straw Insureds regarding whom 32

3

substantive counts of mail and wire fraud are alleged.  SI ¶¶ 43-119.

### B.       Documents Obtained From Insurance Providers

During the course of the Government's pre-indictment investigation, the Government served grand jury subpoenas on eight insurance providers:  Lincoln National Life Insurance Company,[1] PHL Variable Insurance Company (Phoenix), The Penn Mutual Life Insurance Company, Sun Life Assurance Company of Canada, AXA Equitable Life Insurance Company, American National Life Insurance Company, Metlife, Inc., and Transamerica Life Insurance Company (collectively the "Providers").  The subpoenas requested each Provider to produce the following documents (the "Government's Subpoena Requests") for the time period from October 1, 2006 to the date the subpoena was issued, which was between October 2010 and February 2011, depending on the Provider:[2]

1. Any and all plan and trust documents relating to the Charter Oak Trust Welfare Benefit Plan ("Plan"), the Charter Oak Trust ("Trust") or its Trustee, Wayne H. Bursey ("Bursey"), 100 Grist Mill Road, Simsbury, CT 06070

2. Any and all documents relating to life insurance applications submitted by the Plan, the Trust or Bursey

3. Any and all documents relating to life insurance policies ("Policies") owned by the Plan, the Trust, or Bursey

4. Any and all documents relating to premium payments, policy loan payments or any other monies received by the Provider and/or its subsidiaries relating to the Policies

5. Any and all documents relating to any request for withdrawals, pay-outs, policy loan applications or policy loan agreements received by the Provider

---

[1]  The other insurance provider mentioned in the Superseding Indictment was Jefferson Pilot Financial ("Jefferson").  Prior to the Government issuing the subpoenas, Jefferson had been acquired by Lincoln National Life Insurance Company ("Lincoln").  Therefore, the Government did not issue a separate subpoena for Jefferson, and in Lincoln's response to the subpoena, it also produced documents on behalf of Jefferson.

[2]  The Government can provide the Court with copies of the subpoenas if the Court wishes to review them.

and its subsidiaries relating to the Policies

6. Any and all documents relating to commissions paid by the Provider and its subsidiaries to any producer, broker, agent or any other party with respect to the purchase of any of the Policies

7. Any and all documents relating to communications by the Provider and its subsidiaries or any of its agents or representatives concerning the Policies, the Plan, the Trust or Bursey

8. Any and all documents relating to any complaints received by the Provider and its subsidiaries or any of its agents or representatives concerning the Policies, the Plan, the Trust or Bursey

9. Any and all documents relating to any legal proceedings concerning the Policies, the Plan, the Trust or Bursey

Pursuant to the subpoenas, the Providers produced, among other things, what they represented were complete copies of the 84 policy files for each of the 76 Straw Insureds that had a policy in the Charter Oak Trust.  The Providers produced copies of the policies and applications, as well as documents, correspondence and email communications related to the policies, applications, and approval process.  The Providers also produced documents and communications regarding premiums received and commissions paid, and documents related to any complaints and legal proceedings concerning the policies.

In June 2013, six months prior to the return of the original indictment, the Government followed up with each of the Providers and had them provide any additional documents that were responsive to the subpoenas that had been generated after the Providers' prior productions.  In addition, the Government requested that some of the Providers produce copies of documents reflecting their positions on STOLI.

Between the Providers' responses to the subpoenas, the Government's follow-up requests, and other requests that the Government made during the course of the investigation, the Government received approximately 117,000 pages of documents from the Providers.

### C.   Discovery and the Defendants' Subpoena Requests

After the defendants were indicted and arraigned, the Government, in compliance with Rule 16 of the Federal Rules of Criminal Procedure and the Local Rules of the District of Connecticut, began turning over discovery materials to the defendants.  While the Government still has some remaining discovery to provide, the majority of discovery has been turned over to the defense, including the approximately 117,000 pages of material it received from the Providers.

Despite this fact, both defendants have filed motions seeking the issuance of subpoenas that commands each of the Providers to search for and produce essentially the same records.  In his motion, Carpenter seeks the following records:

1. Any and all applications of the individual Insured persons named in the Superseding Indictment as well as any other documents and communications reflecting approval of the applications.

2. Any communications, including, faxes, emails and written correspondence between the provider and the licensed agent involved in the sa1e of the policy.

3. Any communications, including faxes, emails and written correspondence between the provider and the insured or owner of the policy.

4. Any communications, including faxes, emails and written correspondence to or involving Daniel Carpenter.

5. Any document or communications, including faxes, emails and written correspondence to or involving Grist Mill Capital, Ridgewood or any entity involving financing of the policies involved in the Superseding Indictment.

6

6. Any document or communication reflecting premiums received involving the purchaser or funding of subject life policy.

7. Any document or communication reflecting any profit or loss to the provider in connection with the life policy issued in this matter.

8. Any document or communication involving any payment of commission or fee to the agent or third party involved in the sale of the life policy involved in this matter.

9. Any documents concerning STOLI type information/policies provided to the agent, licensed or otherwise, involved in the sales of life insurance to the "straw" insureds.

Bursey seeks only one category of documents, which is the same as Carpenter's first request: "any and all applications of the individual Insured persons named in the Superseding Indictment, as well as any other documents and communications reflecting approval of the applications."

For the reasons discussed below, the defendants' motions should be denied.

## II.   **DISCUSSION**

### A.      **Applicable Law**

Federal Rule of Criminal Procedure 17(c) provides that "[t]he court may direct the witness to produce" the "books, papers, documents, data, or other objects the subpoena designates. . . . in court before trial. . . ." Fed. R. Crim. P. 17(c)(1). The scope of Rule 17(c) is limited. It is well-settled that there is no broad right to discovery in criminal cases, and that Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.").

As the Second Circuit reiterated, *Bowman* provided a "clear statement" that Rule 17(c) is "not an additional discovery device." *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962); *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) ("Courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."); *United States v. Salvagno*, 267 F. Supp. 2d 249, 252 (N.D.N.Y. 2003) (same); *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (same).

To ensure that Rule 17(c) subpoenas are not abused, the proponent of a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Nixon*, 418 U.S. at 700. The proponent must also demonstrate that the materials are "not otherwise procurable" in advance of trial by the exercise of due diligence. *Nixon*, 418 U.S. at 699; *United States v. Barnes*, 560 Fed. Appx. 36, 40 (2d Cir. 2014); *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (same); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (same); *Cherry*, 876 F. Supp. at 552 (same); *see United States v. Eden*, 659 F.2d 1376 (9th Cir. 1981) ("In order to justify a subpoena for production before trial, the proponent must also demonstrate that the subpoenaed materials are not available from any other source[.]"). Likewise, the court must ensure that the "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699 (citation omitted).

Thus, courts routinely deny or quash Rule 17(c) subpoenas where the Government has already obtained the documents from the third party and turned them over to the defense as part of discovery. *See, e.g., United States v. Boyle*, No. 08 CR 523, 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (denying Rule 17(c) subpoena request where, *inter alia*, many of the

8

documents sought were likely to be produced through discovery); *United States v. Columbo*, No. 04-CR-273(NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) (denying motion for subpoenas because, among other things, they "seek documents that duplicate materials already produced by the Government"); *RW Prof'l Leasing Services Corp.*, 228 F.R.D. at 164 (denying defendant's subpoena requests as unreasonable and unnecessary where documents sought were in the Government's possession and would therefore be readily obtainable from the Government).

Moreover, a Rule 17(c) subpoena may be used only "to obtain . . . evidentiary materials." *Cherry*, 876 F. Supp. at 552. The Rule "is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *Cuthbertson*, 630 F.2d at 144. This restriction is in contrast with the rules of civil procedure, which "permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence." *Cherry,* 876 F. Supp. at 553 (citing *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)).

Significantly, a Rule "17(c) subpoena may not be used to obtain impeachment material or material that merely *could* lead to additional admissible evidence." *United States v. Ferguson*, No. 3:06CR137(CFD), 2007 WL 2815068, at *3-4 (D. Conn. Sept. 26, 2007) (emphasis added); "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701 (citation omitted). "Documents are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment." *Cherry*, 876 F. Supp. at 553 ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.").

9

In addition, courts interpreting *Nixon's* admissibility requirement have construed it to require that the material requested have *present* evidentiary value, not merely *potential* evidentiary value.  *See RW Prof'l Leasing Servs. Corp.,* 228 F.R.D. at 162 ("The fact that they are potentially relevant or may be admissible is not sufficient.") (citing *Marchisio,* 344 F.2d at 669); *United States v. Rich,* No. S 83 Cr. 579(SWK), 1984 WL 845, *3 (S.D.N.Y. Sept. 7, 1984) ("Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation.").

Similarly, a Rule 17(c) subpoena cannot properly be issued upon a "mere hope" of discovering favorable or exculpatory evidence.  *E.g., United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir.1996); *Cuthbertson*, 630 F.2d at 146 ("We do not think that [a] 'mere hope' justifies enforcement of a subpoena under [R]ule 17(c)."); *Ferguson*, 2007 WL 2815068, at *4 n.15 ("the 'mere hope' of finding exculpatory material is insufficient to justify enforcement of a 17(c) subpoena"); *United States v. Johnson*, No. S5 10 Cr. 431(CM), 2013 WL 3948454, at *1 (S.D.N.Y. July 24, 2013) ("A general assertion that certain material 'might contain exculpatory information' is insufficient to prevail against a motion to quash under Rule 17(c)" (quoting *United States v. Scaduto*, 94 CR. 311(WK), 1995 WL 130511, at *2 (S.D.N.Y. Mar. 27, 1995)).

**B.    Defendants' Motions Should be Denied**

The defendants' motions for Rule 17(c) subpoenas should be denied because they already have the records they seek, to the extent they exist, except for three categories of documents that Carpenter seeks.  With respect to those categories of documents, Carpenter fails to clear the hurdles imposed by *Nixon* and its progeny, and therefore that request also should be denied.

As discussed, a Rule 17(c) subpoena may not be used to obtain material from non-parties that is procurable through other means.  *See Nixon*, 418 U.S. at 699; *Barnes*, 560 Fed. Appx. at 40; *Irving*, 600 F.2d at 1034; *Eden*, 659 F.2d at 1381.  This includes items the Government has already obtained from those non-parties and turned over to the defense as part of discovery.  *See Boyle*, 2009 WL 484436, at *3; *Columbo*, 2006 WL 2012511 at *15; *RW Prof'l Leasing Services Corp.*, 228 F.R.D. at 164.

Here, the Government has already obtained most of the requested categories of records from the Providers and turned them over to the defendants:

- Bursey's sole request and Carpenter's first request both seek copies of all insurance applications of the insureds named in the indictment, and documents and communications reflecting approval of the applications.  These documents are covered by the Government's Subpoena Requests 2, 3, and 7, which sought any and all documents relating to all Charter Oak policies and applications, and all communications concerning the policies, the Charter Oak Trust Welfare Benefit Plan, and the Charter Oak Trust.

- Carpenter's second and third requests seek communications between the provider and the licensed agent involved in the sale of the policy and between the provider and the insured or owner of the policy.  Just as above, these documents are covered by the Government's Subpoena Requests 2, 3, and 7.

- Carpenter's fifth request seeks any documents and communications involving Grist Mill Capital, Ridgewood or any entity involving financing of the policies in the Superseding Indictment.  These documents are covered by the Government's

Subpoena Requests 2 and 4, which sought any and all documents relating to all
Charter Oak policies and any and all documents relating to premium payments, policy
loan payments, or any other monies received by the Providers relating to the policies.

- Carpenter's sixth request seeks any documents and communications reflecting
premiums received involving the purchaser or funding of the policies. Again, these
documents are covered by the Government's Subpoena Requests 2 and 4.

- Carpenter's eighth request seeks any documents and communications involving any
payment of commissions or fees to the agent or third party involved in the sale of the
policy. These documents are covered by the Government's Subpoena Requests 2 and
6, which sought any and all documents relating to all Charter Oak policies and any
and all documents relating to commissions paid by the Provider relating to the
policies.

Therefore, because the Government has already provided the defendants with copies of
the documents it received from the Providers, their motions requesting subpoenas to obtain the
same documents from the Providers should be denied. *See Boyle*, 2009 WL 484436, at *3;
*Columbo*, 2006 WL 2012511, at *15; *RW Prof'l Leasing Services Corp.*, 228 F.R.D. at 164.

The defendants offer no reason why they should be permitted to issue subpoenas for
documents they already have. Presumably the defendants want to issue the subpoenas on the off-
chance that the Providers will uncover documents they previously did not find. Indeed, the
defendants' state as much in their motion papers. In his motion, Bursey states that he seeks the
requested documents because they "***may*** contain exculpatory evidence[.]"   Doc. 73 at 1
(emphasis added). Both Carpenter and Bursey assert that the subpoenas request "***potentially***

exculpatory materials." Doc. 73 at 5 (emphasis added); Doc 79 at 2 (emphasis added).    They

both also describe the "***potentially*** critical nature of the requested documents and the likelihood

that review of the documents ***will lead to additional investigation***[.]"   Doc. 73 at 9 (emphasis

added); Doc 79 at 7 (emphasis added).

      It is readily apparent that the defendants' requests for subpoenas are based on nothing

more than a mere hope that they will discover favorable evidence or find documents that will

lead to additional investigation.   However, as discussed, "the mere hope that some exculpatory

material might turn up" is insufficient to justify a subpoena under rule 17(c)."  *Cuthbertson*, 630

F.2d at 146; *see Ferguson*, 2007 WL 2815068, at *4; *Johnson*, 2013 WL 3948454, at *2;

*Scaduto*, 94 CR. 311(WK), 1995 WL 130511, at *1; *see also RW Prof'l Leasing Servs. Corp.,*

228 F.R.D. at 162 ("The fact that they are potentially relevant or may be admissible is not

sufficient.").   Nor can a Rule 17(c) subpoena be used to obtain "material that merely *could* lead

to additional admissible evidence." *Ferguson*, 2007 WL 2815068, at *3-4 (emphasis added).

      The only documents that Carpenter is requesting that were not fully covered by the

Government's subpoenas to the Providers are his fourth, seventh, and ninth requests.

      Carpenter's fourth request asks the Providers to produce any communications involving

Daniel Carpenter.  Significantly, this request is not limited in any way by date or subject matter.

Daniel Carpenter has been working in the insurance industry since at least the 1980's.   As

written, Carpenter's fourth request asks the Providers to produce communications as far back 20

years ago, which could not possibly be related to the subject matter of the Superseding

Indictment.  Accordingly, the Government submits that Carpenter's fourth request is overbroad

and seeks irrelevant documents that are likely inadmissible.

To the extent Carpenter only seeks communications that deal with the Charter Oak Policies, the Charter Oak Welfare Benefit Plan, or the Charter Oak Trust, these are covered by the Government's Subpoena Requests, and therefore, the defendant should already have them in his possession, to the extent they exist.

It bears noting that in Carpenter's various motions to dismiss the Superseding Indictment, he repeatedly asserted that he "never communicated" with the insurance providers regarding the policies and that he "had no dealings with the so-called insurance carriers" that issued the policies. Docs. 64 at 3; 66 at 3; 67 at 4. Accepting Carpenter's representations as true, even he does not believe the Providers will have any communications involving him in connection with the policies or Charter Oak Trust. As such, having the Providers go back and search again for such communications (that Carpenter himself does not believe exist) appears to be an unnecessary fishing expedition based on the mere hope that something favorable will be uncovered, which is not the proper use of a Rule 17(c) subpoena.

Carpenter's seventh request asks the Providers to produce any document or communication reflecting any profit or loss to the Provider in connection with the life insurance policies issued in this matter. However, these documents are not relevant to whether the defendants committed the charged offenses, and therefore they likely would not be admissible at trial. Loss is not an element of any of the crimes charged in the Indictment. Moreover, the Government is not required to show that the intended victim was actually defrauded. The Government need only show that the "defendant[] contemplated some actual harm or injury." *See United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991); *United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) (noting that "the scheme need not have resulted in actual injury to the

14

scheme's victims").  In his motion, Carpenter fails to explain how the documents are relevant and on what grounds they would be admissible.  As such, his request to subpoena these documents should be denied.

To the extent that Carpenter believes this request would be relevant to the calculation of loss for sentencing, he is incorrect. Under the Sentencing Guidelines, "loss is the greater of actual or intended loss."  U.S.S.G. App. Note 3(A).  Even if every one of the Providers eventually reaped a net profit on the policies they issued based on the defendants' scheme, the Guidelines loss would be based on the intended loss amount. In any event, even if the Court finds that these documents would be relevant at sentencing, the defendant should wait and see if he is convicted first, before burdening the non-parties with the expense of producing such documents.

Finally, Carpenter's ninth request seeks any documents concerning STOLI type information/policies provided to agents involved in the sale of life insurance to the straw insureds in the Superseding Indictment.  Although not specifically covered in the Government's Subpoena Requests, the Government notes that the discovery it has produced to date contains many of these documents, some of which were obtained from some of the Providers, and some of which were obtained from other sources, such as the computers and emails that have been searched to date.  Before issuing blanket requests to all the Providers for such documents, Carpenter should at a minimum go through the documents he has and narrow his request to the specific Providers for which he does not have the requested documents.  *See Nixon*, 418 U.S. at 699 (before authorizing a Rule 17(c) subpoena, the Court should consider whether the materials are "not otherwise procurable reasonably in advance of trial by exercise of due diligence").

15

*      *      *.

In sum, the defendants have utterly failed to demonstrate why their motions for Rule 17(c) subpoenas should be granted. Bursey already has the documents he seeks. With respect to Carpenter, he already has most of the categories of documents he seeks. Thus, their motions appear to have no purpose other than to engage in an improper fishing expedition and harass the victim insurance Providers by having them go through the unnecessary burden and expense of searching for, reviewing, and producing the same documents for a second time on the mere hope of finding some favorable evidence.

With respect to communications with Carpenter that have absolutely nothing to do with the Charter Oak policies and have no temporal limitation as to scope and time, Carpenter has failed to show that such information is relevant or would be admissible at trial, and his request can only be viewed as an improper attempt to obtain discovery. This is clearly not the use for which Rule 17(c) was intended. Similarly, the profit and loss statements he seeks for each policy are not relevant to the elements of the charged offenses, and therefore would not be admissible at trial. Finally, with respect to the STOLI type documents he seeks in his ninth request, he should first go through the documents he has to ensure that the documents are not otherwise procurable through other means, as set forth in *Nixon*.

Accordingly, the defendants' motions should be denied.

16

III.    <u>CONCLUSION</u>

For the forgoing reasons, the Government respectfully requests that the Court deny the defendants' motions.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY


/s/ *David E. Novick*
DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02874
157 Church Street, 25th Floor
New Haven, CT 06510


/s/ *Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 5, 2014, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Neeraj N. Patel*
Neeraj N. Patel
Assistant United States Attorney