1                    UNITED STATES DISTRICT COURT

2

3                  FOR THE DISTRICT OF CONNECTICUT

4

5     – – – – – – – – – – – – – – – x
                                    :
6     UNITED STATES OF AMERICA      :   No.  3:13CR226(RNC)
                                    :
7              vs.                  :
                                    :
8     DANIEL CARPENTER,             :
                                    :   HARTFORD, CONNECTICUT
9                    Defendant.     :   November 6, 2017
                                    :
10    – – – – – – – – – – – – – – – x

11

12

13                    TELEPHONE CONFERENCE

14

15         BEFORE:

16              HON. ROBERT N. CHATIGNY, U.S.D.J.

17

18

19

20

21

22

23                              Darlene A. Warner, RDR-CRR
                                Official Court Reporter
24

25

1

APPEARANCES:

2

3       FOR THE GOVERNMENT:

4           U.S. ATTORNEY'S OFFICE-NH
            157 Church Street
5           P.O. Box 1824; 23rd Floor
            New Haven, Connecticut 06510.
6           BY:  DAVID E. NOVICK, AUSA
                 NEERAJ PATEL, AUSA

7

        FOR DAVID CARPENTER:

8

            BROWN, PAINDIRIS & SCOTT
9           100 Pearl Street, 2nd Floor
            Hartford, Connecticut 06103
10          BY:  RICHARD R. BROWN, ESQ.
                 CODY N. GUARNIERI, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           10:00 A.M.

2

3               MR. NOVICK:  For the government, David Novick

4    and Neeraj Patel.  Good morning.

5               MR. BROWN:  For the defense, Attorney Richard

6    Brown and Cody Guarnieri.

7               THE COURT:  Good morning.  Can everybody hear me

8    all right?

9               MR. NOVICK:  Yes, Your Honor.

10              MR. BROWN:  Yes, Your Honor.

11              THE COURT:  Okay.  Mr. Brown, you're somewhat

12   difficult to hear.  I don't know if it's possible for you

13   to increase the volume.

14              MR. BROWN:  Is this better?

15              THE COURT:  Yes, that's better.

16              MR. BROWN:  I'm on top of the phone.

17              THE COURT:  Okay, thank you.

18              This is a telephone conference in the Carpenter

19   case to address the pending motions.

20              Numerous motions have been filed.  I have read

21   all the papers.  The most recent motions had not generated

22   a response from the government due to their recent filing.

23              Mr. Novick, are you in a position this morning

24   to address those most recent motions?

25              MR. NOVICK:  Your Honor, we could talk in

1    general terms about them.  To be completely candid with

2    the Court, I've -- as I suspect the Court knows -- been

3    focused on another case and dealing with that and was

4    intending to turn back to this after Wednesday.

5            I've read the papers.  My co-counsel, Mr. Patel,

6    has read and started to work on a response, but I don't

7    know that I'd be able to address them in a fulsome way.

8            I could give the Court my initial impressions.

9    But I expect to have a full response no later than, if

10   it's okay with the Court, a week from Friday.

11           THE COURT:  Okay, that's fine.

12           Let's talk about the motions that have been

13   fully briefed.

14           I will give you an opportunity to make

15   additional presentations with regard to any of these

16   motions if there is something new that you want to say or

17   if there is something in particular that you want to be

18   sure to bring to my attention.

19           In giving you that opportunity, I don't mean to

20   suggest that I am not fully familiar with your arguments.

21   I think that it's fair to say that I am fully familiar

22   with what you have submitted, but I do want to give you a

23   chance to comment further if you feel that it would be

24   helpful to do so.

25           Accordingly, let's begin with the motion for

1      judgment of acquittal under Rule 29.  This is ECF Number

2      228.

3                This motion is 135 pages long, that is to say,

4      the memorandum in support of the motion is 135 pages long,

5      and I've read the memorandum in its entirety.

6                Mr. Brown, is there anything you would like to

7      add to that presentation?

8                MR. BROWN:  Well, Your Honor, I wasn't aware

9      that we were going to argue these cases on the phone as

10     opposed to set down a date before the Court.

11               Obviously as relates to this motion and all the

12     motions, we feel very strong that the cases that we cited,

13     in particular the Countrywide case, and a recent case also

14     Honeycutt, which I think we've cited in our briefs, seem

15     to strongly suggest that the government has not met its

16     burden of proof because of the fact that even under the

17     right to control theory that misrepresentations or

18     non-disclosures also require a tangible economic harm as

19     we cited in I think it was U.S. v. Finazzo, a Second

20     Circuit case this year, 850 F.3d at 94.

21               And we believe that that's an important

22     distinction that with all due respect the Court did not

23     fully take into consideration and rather just simply rely

24     more so on the general concept of right and control to

25     that they lost their right to control and therefore

1    suffered a harm, a recognizable harm.  And it's our

2    position that given this recent case, not sufficient for

3    findings of guilt.  And that we also reiterate, as I

4    stated and in the other cases I just cited, that the

5    evidence was insufficient to constitute either mail and/or

6    wire fraud.

7             And then finally, I guess I would want to point

8    out to the Court that even in the Binday case, the Second

9    Circuit, that the right to control one's assets does not

10   render every transaction induced by deceit actionable

11   under mail or wire fraud.

12            So we're strongly suggesting to the Court, again

13   with all due respect, that the burden placed upon the

14   government to prove all the elements by proof beyond a

15   reasonable doubt have not been met, Your Honor.

16            THE COURT:  Okay.

17            Mr. Novick, is there anything you want to add to

18   your memorandum?

19            MR. NOVICK:  Your Honor, I appreciate the

20   opportunity, however, I think we've fully briefed answers

21   to everything Mr. Brown has raised, and I do believe

22   Binday more than any other case controls here.  It's good

23   law.  The rationale was reaffirmed in Finazzo, but the

24   underlying facts in Binday are spot on to this case, so I

25   think that the Court should deny the motion.

1          Thank you, Your Honor.

2          THE COURT:  Okay.  I am denying the motion.  I

3    think that the written decision that I rendered after the

4    trial speaks for itself.  The defendant's motion does not

5    cause me to think that any of my findings or conclusions

6    are incorrect.

7          In its opposition memorandum, the government

8    does a thorough job of explaining that in detail, and I

9    don't think any useful purpose would be served by having

10   me repeat what I said in my written decision or what the

11   government has said in its opposition memorandum.

12         With regard to the Countrywide decision which

13   came down after I issued my decision, I think the

14   government's opposition memorandum does a very good job of

15   explaining why Countrywide does not provide Mr. Carpenter

16   with a basis for relief, and again I see no point in

17   simply repeating what the government has stated in its

18   opposition memorandum.

19         Suffice it to say that Binday remains good law

20   after Countrywide and Mr. Carpenter's convictions for mail

21   and wire fraud are fully supported by the analysis in

22   Binday.

23         The defendant's memorandum devotes most of its

24   length to arguing the insufficiency of the evidence to

25   prove mail and wire fraud, and as I have explained, I

1    think that my decision speaks for itself and nothing in

2    the defendant's memo causes me to think that I was in

3    error with regard to any of my findings and conclusions.

4    I continue to believe that the evidence is well beyond

5    sufficient to support the defendant's conviction on each

6    and every count.

7            With regard to other matters raised in the Rule

8    29 motion, I think that the evidence is more than

9    sufficient to support venue in Connecticut.  Again, the

10   government's memo does a nice job of explaining why that

11   is the case.

12           I continue to believe that each of the counts

13   was timely under the statute of limitations for reasons

14   that I have stated and that the government has also stated

15   in its opposition memorandum.

16           With regard to Mr. Carpenter's other arguments

17   in the Rule 29 motion, he argues that he didn't have fair

18   warning that his conduct violated the law.  I can't agree

19   with that.

20           As the government shows in its opposition

21   memorandum, the courts have long ruled that material

22   misrepresentations in insurance applications are illegal

23   and it should have been clear to Mr. Carpenter that when

24   these misrepresentations deprive somebody of information

25   necessary to economic decision-making and thus violate the

1    right to control one's assets, the conduct is punishable

2    under the mail and wire fraud statutes.

3           The fact that Mr. Carpenter engaged in his

4    criminal conduct prior to the Binday case does not

5    insulate him from liability.  The Second Circuit had made

6    it clear that the right to control theory applies in the

7    context of wire and mail fraud, and Mr. Carpenter had fair

8    warning that if he undertook to defraud the carriers by

9    depriving them of material information concerning the

10   STOLI scheme, he could be held to account under the mail

11   and wire fraud statutes.

12          While it's true that the government points to no

13   STOLI case directly on point preceding Mr. Carpenter's

14   unlawful conduct, the absence of such a case directly on

15   point covering the precise factual situation presented in

16   this case does not provide a basis for granting relief to

17   Mr. Carpenter.

18          I believe he knew that his scheme was illegal

19   and undertook to try to conceal it.  I think that my

20   findings make that clear, and given those findings, I have

21   no difficulty concluding that Mr. Carpenter had fair

22   warning.

23          With regard to Mr. Carpenter's role, I think it

24   bears repeating that based on the evidence presented by

25   the government, he orchestrated the scheme to defraud the

1    carriers into issuing policies based on

2    misrepresentations, policies that they would not have

3    issued had they known the truth.

4            His assertions in his Rule 29 motion that there

5    was no evidence that he intended to deceive anybody, no

6    evidence that he made any misrepresentations, no evidence

7    that he intended to harm, no evidence that he did anything

8    wrong much less anything illegal, no evidence that he

9    participated in any conspiracy, all of those assertions

10   unsupported by any reference to any evidence really carry

11   no weight at this point.  So I'm denying the Rule 29

12   motion.

13           With regard to the next motion, the motion for a

14   new trial, this is ECF Number 230.  Anything you want to

15   add to that motion, Mr. Brown?

16           MR. BROWN:  No, Your Honor.  You know, I think

17   everything I had to say we certainly said it in our

18   briefs, which I perceive to be very thorough.

19           THE COURT:  All right, thank you.

20           Mr. Novick?

21           MR. NOVICK:  Nothing further from the

22   government, Your Honor.

23           THE COURT:  Okay.

24           This motion is also denied for substantially the

25   reasons stated by the government in its opposition

 1   memorandum.  To the extent the motion incorporates the

 2   arguments made in support of the Rule 29 motion, I've

 3   already denied the Rule 29 motion.  I don't need to

 4   revisit that.

 5        The defendant argues that he should get a new

 6   trial because of a Brady violation involving Bruce Mactas.

 7   I think the government has correctly responded that the

 8   testimony in question is not exculpatory.  In any event,

 9   the defendants had access to it well in advance of the

10   trial.

11        The defendant argues that he was deprived of

12   compulsory process to obtain witnesses for his defense.

13   The argument appears to be that the defense expected the

14   government to call every witness on its witness list and

15   its failure to do so served to surprise the defendant and

16   deprive him of compulsory process.

17        As to that argument, the government correctly

18   responds that just because it didn't call everybody on its

19   list did not deprive the defendant of any protected right,

20   including a right to compulsory process.  The defendant

21   remained free to call anybody he wished.

22        Next the defendant argues that the government

23   intimidated witnesses with threats of prosecution.

24        As to this argument, the government correctly

25   responds that there is no credible allegation of any

1    improper threat.

2         The defendant next argues that the delay in the

3    trial of this case until he was incarcerated on his prior

4    conviction unfairly prevented him from assisting in his

5    defense.  I think the government correctly respond that a

6    previous conviction resulting in imprisonment cannot be

7    relied on by the defendant to obtain a new trial here.

8    There is no reason to believe that Mr. Carpenter was

9    unable adequately assist his counsel.  I see no basis for

10   finding that there was a problem in that regard.  It

11   appears to me that Mr. Carpenter was actively involved in

12   his defense notwithstanding his status as a convicted

13   prisoner in custody.

14        The defendant argues that there was a violation

15   of federal law in connection with his transportation

16   between Wyatt and other detention facilities.  I think

17   that argument is meritless.  I think that Mr. Carpenter

18   had an opportunity to make timely applications for

19   assistance from the court with regard to his custodial

20   status, his communications with his counsel, and any other

21   matters bearing on his ability to participate in the

22   defense of the case.

23        Applications were made from time to time, as I

24   recall, and they were addressed as they came along, and I

25   don't think that there was any error in any of the

1    dispositions of those applications and certainly none that

2    would warrant a new trial.

3            So the motion for a new trial is denied.

4            Moving along, we have a motion for

5    reconsideration of the Court's ruling on the motion to

6    suppress.  This is ECF Number 243.

7            Anything to add on that score, Mr. Brown?

8            MR. BROWN:  Your Honor, again we've submitted a

9    rather long brief, some of which was filed under seal, and

10   it's our position, Your Honor, we stand by our brief.  We

11   believe that the cases that we cited, the facts we cited,

12   clearly justify the reconsideration of the motion to

13   suppress in a ruling favorable to the defendant,

14   Mr. Carpenter, Your Honor.

15           THE COURT:  All right, thank you.

16           Mr. Novick, any comments?

17           MR. BROWN:  No, Your Honor.  We likewise believe

18   that we've fully responded to the defendant's motion for

19   reconsideration here.

20           THE COURT:  Okay.  In your opposition, you state

21   that the motion is untimely and fails on the merits.

22           With regard to timing, I agree that a motion for

23   reconsideration of a pretrial ruling filed well after the

24   trial itself is untimely.  I don't see any reason why I

25   should entertain the motion given the timing.  If there

1    were good reason to do so, I would be open to

2    reconsideration, but I don't see any good reason to do so

3    on the record before me.  There's no new law on the point

4    and I think that the analysis of the motion is still

5    correct.

6             I also think that it's important to recognize

7    that, as the government points out, Mr. Carpenter does not

8    have standing to seek a suppression order as to the great

9    bulk of the government trial exhibits which resulted from

10   the search in 2010.

11            Because I see no need to reconsider the matter,

12   and because the motion is untimely, the motion is denied.

13            Next we have a motion for reconsideration asking

14   me to vacate the June 6, 2016 memorandum of decision

15   including the findings and special verdicts.  This is ECF

16   Number 247.

17            Anything further on that motion, Mr. Brown?

18            MR. BROWN:  Your Honor, would you again repeat

19   which motion you're considering?

20            THE COURT:  ECF Number 247, which is a motion

21   for reconsideration and to vacate the Court's June 6, 2016

22   decision and findings of fact.

23            MR. BROWN:  Yes, Your Honor, again on that

24   particular motion I believe that we have thoroughly

25   briefed that motion.  There's no question in my mind about

1   that.  And we obviously believe -- we wouldn't have filed

2   it otherwise -- that it has merit, and we're asking the

3   Court to grant that one, Your Honor.

4           THE COURT:  All right, thank you.

5           Mr. Novick, any comments?

6           MR. NOVICK:  Nothing from the government, Your

7   Honor, thank you.

8           THE COURT:  Okay.  This motion is also untimely,

9   filed almost a year after the decision was rendered.  As

10  far as I can tell, it's procedurally improper apart from

11  the timing because the rules don't contemplate that a

12  defendant will be able to move for reconsideration of a

13  court's decision following a bench trial when the

14  defendant has an opportunity to apply for relief under

15  Rule 29, as Mr. Carpenter has done here, as well as by way

16  of a motion for a new trial pursuant to Rule 33, as he has

17  also done.

18          I've addressed those motions and denied them for

19  lack of merit.

20          As I look at this motion for reconsideration, it

21  is largely duplicative of the others and I don't see

22  anything that warrants reconsideration of any finding that

23  I made or any conclusion that I reached; and so this

24  motion is denied for all those reasons.

25          Next we have a motion for personal access to

1    discovery.  This is ECF Number 258.

2            Any further comment on that, Mr. Brown?

3            MR. BROWN:  May I just have a moment, Your

4    Honor?

5                   (Pause)

6            MR. BROWN:  Your Honor, again, this is referring

7    I believe to a July 20th motion?

8            THE COURT:  Correct.

9            MR. BROWN:  Again, I submit, Your Honor, that

10   the argument contained herein has merit and that what

11   we're asking for is reasonable and that we're asking the

12   Court to grant our motion on this particular matter of

13   defendant's motion for personal access and retention of

14   discovery materials.

15           I think we've articulated it clearly, Your

16   Honor.

17           THE COURT:  Let me be sure I understand what

18   Mr. Carpenter is looking for as a practical matter.

19           Can you explain what he needs?

20           And if you do that, I'll ask the government to

21   comment and then I can rule.

22           MR. BROWN:  Well, Your Honor, it just seems that

23   from our perspective that much of the material that the

24   government used was -- during the course of the trial

25   itself -- was procured from various what we could

1    characterize as unlawful searches at this building on

2    Grist Mill Road and that it just seems that in this

3    particular case that we believe that if this motion were

4    granted that we should have unfettered access to the

5    government's discovery; that we believe that if we had

6    that, which we don't believe we do have, that would lead

7    to information that would support the Court reversing its

8    findings.

9           And it's difficult, Your Honor, only because we

10   don't know exactly what it is that we would find and that

11   we believe that having unfettered access, the type that is

12   characterized in the motion, would ultimately result in

13   the Court's decision in this case being reversed.

14          THE COURT:  When you say "we," do you mean the

15   lawyers or do you mean Mr. Carpenter?

16          MR. BROWN:  I mean Mr. Carpenter.

17          THE COURT:  Is this a motion that asks me to

18   grant Mr. Carpenter the same access to discovery that you

19   have had as his counsel?

20          MR. BROWN:  Well, Your Honor, it's really more

21   as was intended as a practical matter.

22          Mr. Carpenter, while we all agree could come to

23   counsel's office, the amount of material -- truthfully one

24   might argue, it means a document -- even though we tried

25   to narrow it down to what we believe to be key points,

1    nevertheless, we were at a, during this case, a

2    significant disadvantage because of the fact that the

3    client, Mr. Carpenter who best knows the case, having

4    lived through the period in question, involved to some

5    degree with this matter, did not have unfettered access in

6    a practical way.

7            It's not a case where there was simply a few

8    hundred or even a few thousand documents to go through.

9    It's just that Mr. Carpenter has spent virtually every

10   minute of certainly every day, it appears, pouring through

11   all this stuff trying to review everything and put it in

12   proper context.

13           It just wasn't practical for him to be at our

14   office all this time, and that was the purpose of the

15   motion, to allow him unfettered access at his house with

16   the understanding that he would respect court orders and

17   the prosecutor's rules in terms of reviewing the documents

18   and not copying the documents without authorization or

19   provide them to third parties.

20           THE COURT:  Okay.  So Mr. Novick, why shouldn't

21   I allow Mr. Carpenter to have complete access to

22   everything that has been provided to his counsel?

23           MR. NOVICK:  Sure, Your Honor.

24           So our objection is principally one of security

25   for the myriad people, witnesses, and others whose

1    personal identifying information is all over.  It's

2    medical records, frankly, all over this discovery.  And

3    really not extractable from it.

4              So we've been trying to and have tried in good

5    faith to work with counsel to find a solution that doesn't

6    disclose that information -- that doesn't leave that

7    information purely in the hands of Mr. Carpenter, but

8    would have some check on it.

9              Historically, and throughout the pendency of the

10   case, with counsel's blessing, that access was arranged

11   through I believe a server at Halloran & Sage, which was

12   counsel for Mr. Carpenter's entities, and that worked

13   fine.  My understanding, there were never any complaints

14   lodged.

15             I know that Mr. Carpenter's sister from time to

16   time, frequently, would go over to Halloran and look at

17   the material, and I understand now that they want to do

18   away with that level of protection.

19             I know at some point we tried to arrange a

20   system whereby they would be able to -- Mr. Carpenter

21   might be able to remote log in to the server from his

22   house, again so that the actual documents aren't being

23   housed in Mr. Carpenter's house, which is ultimately the

24   government's issue here.

25             I don't know what happened to that.  That maybe

1    is technologically not feasible, although I will say

2    that's what we do to access our material from outside the

3    office.

4              So it's not, Your Honor, in any way -- and I

5    started to understand from Mr. Brown's application a

6    minute ago, that he was saying that they didn't have

7    access to this material, which is clearly not the case.

8    They've had access to this material from the very

9    beginning.  And far more, frankly, than they would

10   otherwise be entitled to.

11             We have given them everything that we've had in

12   our possession including not just -- we're not talking

13   just about the material that was seized via search

14   warrant, we're talking about grand jury subpoena returns

15   from countless insurance companies, from individual

16   victims and witnesses, from, you know, insureds with, you

17   know, again with a lot of their medical records.

18             So, you know, the government's anxiety here, you

19   know, is one of sort of practical concern for the people

20   whose information is housed within this material and

21   trying to find some reasonable accommodation.

22             We continue to be willing to work with counsel

23   to find a solution short of just dumping the entirety of

24   the government's database into a computer at a private

25   citizen's house, no less Mr. Carpenter who has now been

1    convicted of wire and mail fraud.

2            So that, Your Honor, in a nutshell is our issue

3    here.

4            And also, again, have no problem if he goes to

5    counsel's office and looks at this material.

6            MR. BROWN:  Your Honor, may I respond?

7            THE COURT:  Yes.

8            MR. BROWN:  I don't want to imply that we didn't

9    have the material at our office.  I didn't intend that.

10   But rather that the process, even having it at our office,

11   is depriving Mr. Carpenter, who was doing his own

12   research, his own searches of his constitutional right to

13   present his best defense.  And we cite in the motion the

14   reasons why we feel that that's justified in expanding the

15   agreement to allow Mr. Carpenter unfettered access at his

16   office, which is in his home, to conduct a search

17   primarily because again of the incredible size of the

18   documents that are available, Your Honor.

19           THE COURT:  Okay.  I'm denying this motion as

20   well.  I think that there is no sufficient justification

21   for requiring the government to comply with

22   Mr. Carpenter's request that he have in his possession all

23   of these documents.

24           Mr. Carpenter's represented by able counsel.

25   Mr. Carpenter has had the Court's ruling for over a year.

1    Mr. Carpenter and his counsel have submitted numerous

2    lengthy motions based on the evidence that was presented

3    at trial.  I'm satisfied that those motions have been

4    properly denied.

5            It is of concern to me that Mr. Carpenter has

6    now been convicted of fraud, not just in this case, but

7    previously, and the assertions that have been made in the

8    memoranda in support of his motions lead me to conclude

9    that what he is asking for is an opportunity to be able to

10   pursue what might be called a fishing expedition in hopes

11   of finding something that could be the basis for yet

12   another motion.

13           I think balancing his interest in being able to

14   do that on the one hand and the privacy interests of the

15   individuals who have their personal information in their

16   documents, which cannot be extracted, it seems, as well as

17   the government's interest in maintaining the respect for

18   law that could be eroded if Mr. Carpenter's request were

19   granted and he had access to all of this material, I think

20   that the government has the better of the argument.

21           If Mr. Carpenter could show a particular need

22   for a specific type of material that he needs to be able

23   to access in his home, that would be a different

24   application.

25           Counsel states that Mr. Carpenter believes that

1    with unfettered access to the material at his home he will

2    be able to demonstrate that he's in fact innocent.  I

3    think that is exceeding unlikely.

4         The evidence presented by the government

5    establishes beyond a reasonable doubt that Mr. Carpenter

6    orchestrated this scheme, he formulated it, he implemented

7    it, he was clearly in charge of the conspiracy, and I

8    can't imagine what material he might find that could show

9    that in fact he was entirely innocent, as he asserts in

10   his motion papers.

11        So that motion is denied.

12        This leads to the two more recent motions which

13   we touched on at the beginning:  A motion for a mistrial,

14   which is ECF Number 295, and a motion for a new trial ECF

15   Number 298.  These motions appear to be based primarily on

16   the IRS 302 of an interview of Mr. Cherneski.

17        I understand, Mr. Novick, that you're not able

18   to respond in full and will be doing so, but can you give

19   me a sense of how the government sees that motion at the

20   moment?

21        If not, that's okay.  But if you can give me

22   some sense of how the government sees that motion, it

23   would be helpful to me.

24        MR. NOVICK:  Of course, Your Honor.

25        Can you give me just one moment, please?

1          THE COURT:  Yes.

2          MR. NOVICK:  Thank you.

3              (Pause)

4          MR. NOVICK:  Okay, Your Honor, just in broad

5     strokes, and again I want to get more into the weeds on

6     this, this is not a statement that the government had.

7     When I say the government, the U.S. Attorney's Office in

8     Connecticut or the Department of Labor, which was the

9     investigating agency here.

10          So I think in part you're going to hear from us

11    about the fact that, you know, this is a different

12    prosecution team out in Wisconsin.  There's certainly some

13    interaction between the two to the extent we searched

14    material that they had already searched, and so we were

15    certainly aware of their existence, but we were not

16    involved in their investigation in any substantive way and

17    did not have their interview reports.

18          And I have -- so we had perhaps one, I believe,

19    because someone spoke about the Charter Oak Trust.  They

20    alerted us to that.  It was a different witness, not

21    somebody who testified at trial, and, you know, not

22    related to this issue.

23          So number one, we didn't have access to this.

24    We did not -- they're not part of the prosecution team.

25    And so it would not have been something in the ordinary

1    course we would have produced in discovery because we

2    didn't have it.

3           Number two, we view this, even under the

4    prosecution team analysis, it's not Jencks material.  This

5    is not an adopted statement of Mr. Cherneski, it's a

6    report based on notes from the interview is my

7    understanding.  It's not -- so Jencks wouldn't apply here.

8           It's not really -- it's not Brady.  We don't

9    think that it's in itself exculpatory, particularly in

10   light of the overwhelming evidence that Mr. Carpenter

11   controlled all of these entities and not just Benistar.

12   So we'll probably get into -- we'll probably get into that

13   as well.

14          We'd also probably point out to the Court that,

15   you know, certainly it's the government's position, that

16   Mr. Carpenter -- on the Court's findings that

17   Mr. Carpenter was a -- the controller of all of these

18   entities, was not just based on Mr. Cherneski's say so.

19   He testified based on a number of documents and to

20   reinforce that in spades, contemporaneous statements by

21   Mr. Carpenter, directing people what to do.  You know, the

22   memorandum related to Charter Oak Trust where he tells

23   people exactly what should and shouldn't happen.

24          So I think you'll also hear from us in response

25   that this was -- even if Mr. Carpenter had access to this

1    particular statement at the time, not much hay could have

2    been made of it.

3              But again, Your Honor, we would like to dig a

4    little more deeply into that and we'll get you a fulsome

5    response by a week from Friday.

6              THE COURT:  Okay, all right, thank you.

7              I think that at this point it behooves me to

8    enter a scheduling order leading to a sentencing hearing.

9              If it should turn out that these remaining

10   motions, 296 and 298, prove to be well-founded entitling

11   Mr. Carpenter to relief, then that's fine.  But I think we

12   need to have an order in place for the schedule, and so

13   I'm setting the sentencing date for February 21, 2018, and

14   we'll have to notify the probation office of that.

15             I'm looking at the sequence that would apply in

16   advance of that date.

17             The first disclosure of the presentence report

18   would be January 10, the defendant's objections would be

19   due January 24, the second disclosure would be due

20   February 3, the defendant's sentencing memo would be due

21   February 7, and the government's memo February 14, with

22   any reply by the defendant due February 17, all in order

23   that a hearing could be held February 21.

24             Why don't we assume that is the schedule, with

25   the sentencing hearing at 10:00 a.m., and that will be the

1    schedule unless and until it changes pursuant to further

2    order of the Court.

3              MR. BROWN:  Your Honor, I missed the date for

4    the first PSR.

5              THE COURT:  January 10.

6              MR. BROWN:  Thank you, Your Honor.

7              THE COURT:  I think that covers what we need to

8    do for now.

9              Again, Mr. Novick, your memorandum in opposition

10   to these remaining two motions will be filed a week from

11   Friday, is that right?

12             MR. NOVICK:  Yes, please, Your Honor.

13             THE COURT:  Okay.  Mr. Brown, you'll have an

14   opportunity to file a reply, and we will schedule a

15   conference on those motions as well.

16             MR. BROWN:  Yes, Your Honor.

17             THE COURT:  One other thing:  As I review the

18   docket in this case, I see that various matters have been

19   filed under seal and remain sealed.  The rules on sealing

20   are quite stringent and I need to make sure that the rules

21   have been satisfied as to any matter that remains under

22   seal, so let me alert you to that and let me ask you to be

23   prepared to explain to me why anything that is currently

24   under seal should remain under seal.

25             Unless you show why the sealing is proper under

1    the applicable rules -- and I'm referring here to our

2    Local Rule and the case law on which it is based -- then

3    I'm going to have to order material unsealed, so please be

4    aware of that.

5              I think it will be timely if you are in a

6    position to make that showing to me in 30 days, in other

7    words, I would need to hear from you not later than 30

8    days from now unless an application for an extension of

9    time is made.

10             MR. BROWN:  Yes, Your Honor.

11             MR. NOVICK:  That should be fine, Your Honor,

12   thank you.

13             THE COURT:  Okay.

14             There's one last point.

15             I think that, as I said at the beginning, the

16   decision that I rendered after the trial adequately

17   addresses why I believe Mr. Carpenter is guilty.  I think

18   it adequately addresses each of the points that is made in

19   his posttrial motions, but I want to be clear about the

20   aiding and abetting counts.

21             To the extent there's any ambiguity about that,

22   I agree with the government's position as stated in its

23   opposition memorandum to the Rule 29 motion that the

24   evidence is sufficient to find that Mr. Carpenter aided

25   and abetted the crimes charged in each of the substantive

1     counts.

2            Mr. Carpenter seeks to depict himself as a

3     victim of the wrongdoing by others, he blames the agents

4     of the carriers and others, but I think that the evidence

5     is more than sufficient to prove beyond a reasonable doubt

6     that to the extent people such as Mr. Bursey or

7     Mr. Waesche or other agents who signed applications

8     violated the law, and they did, Mr. Carpenter aided and

9     abetted those violations.

10            Accordingly, I'll let you go, all of these

11     motions having been addressed with the exception of ECF

12     295 and ECF 298; and as to those, we'll be scheduling a

13     conference in the not too distant future after the motions

14     are fully briefed.

15            Thank you all.

16            MR. NOVICK:  Thank you, Your Honor.

17            MR. BROWN:  Thank you, Your Honor.

18                (Proceedings adjourned at 11:05 a.m.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3                In Re: U.S. vs. CARPENTER

4

5

6           I, Darlene A. Warner, RDR-CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages are a true and accurate transcription of

10   my shorthand notes taken in the aforementioned matter to

11   the best of my skill and ability.

12

13

14

15

16                   /s/_____

17                   DARLENE A. WARNER, RDR-CRR
                        Official Court Reporter
                     450 Main Street, Room #223
18                   Hartford, Connecticut 06103
                          (860) 547-0580

19

20

21

22

23

24

25